*In Re:* Estate of Frank Thompson, Deceased. Sarah Thompson, Appellant, v. William Thompson, Lucinda Bryant, Will Homer, *et al.,* Appellees.

199 So. 352
En Banc
Opinion Filed October 18, 1940
On Rehearing, Division A, December 20, 1940
Rehearing Denied January 10, 1941

*J. C. Getzen, Jr.,* and *T. H. Getzen,* for Appellant;

*T. G. Futch, W. T. Hall, P. B. Howell* and *Carroll W. Fussell,* for Appellee.

Per Curiam.—In this cause Mr. Chief Justice (TERRELL,

Mr. Justice Whitfield and Mr. Justice Thomas are of opinion that the order of the circuit court in this cause should be affirmed while Mr. Justice Brown, Mr. Justice Buford and Mr. Justice Chapman are of opinion that the said order should be reversed. When the members of the Supreme Court, sitting six members in a body and after full consultation, it appears that the members of the Court are permanently and equally divided in opinion as to whether the order should be affirmed or reversed, and there is no prospect of an immediate change in the personnel of the Court, the order should be affirmed; therefore it is considered, ordered and adjudged under the authority of State ex rel. Hampton v. McClung, 47 Fla. 224, 37 So. R. 51, that the order of the circuit court in this cause be and the same is hereby affirmed.

Affirmed.

Terrell, C. J., Whitfield, Brown, Buford, Chapman, and Thomas, J. J., concur.

## On Rehearing

Buford, J.—On appeal we review order of the circuit court reversing the order of the probate court wherein the probate court held that Sarah Thompson was the widow of Frank Thompson, deceased, she being the common-law wife of Frank Thompson at the time of his death.

We deem it unnecessary to detail the evidence. It is sufficient to say that there is evidence in the record which shows that a common-law marriage was contracted between Frank Thompson and Sarah Thompson on July 5, 1918, and that the marriage was consummated by cohabitation. The evidence of the common-law marriage contract is found in the testimony of Sarah Thompson and is undisputed.

This testimony was admissible because the record shows conduct on the part of adverse parties sufficient to waive

the provisions of Section 2705 R. G. S., 4372 C. G. L., in this, viz.: The record shows that the attorney for the administrator cross-examined the witness Sarah Thompson and those claiming as heirs-at-law of Frank Thompson testified as to the relationship between Frank Thompson and Sarah Thompson. This constituted waiver of the disqualification. See McMullen, *et al.,* v. St. Lucie County Bank, 128 Fla. 745, 175 Sou. 721; Rich v. Hunter, 135 Fla. 309, 185 Sou. 141.

Aside from this direct evidence tending to prove the marriage contract, there was convincing supporting proof of habit and repute tending to establish the relationship of common-law husband and wife.

In Edge as Administrator, etc., v. Rynearson, 107 Fla. 461, 145 So. 180, we said:

"Capacity and mutual consent are essential to a common-law marriage, which is recognized in this State. In LeBlanc v. Yawn, 99 Fla. 328, 126 So. 789, we held that the best evidence of such a marriage was the testimony of the contracting parties or those present when they mutually agreed to take each other as man and wife. If this proof cannot be had it may be proven by habit or repute. When habit or repute is relied on it must be supported by positive proof that it was generally understood among the neighbors and acquaintances in the community and with whom the parties associate in their daily life that they are living together as man and wife and that their relations are not meretricious."

So it is that it is clearly apparent from the record that there was sufficient legal evidence before the county judge to support his finding and order. The record went on appeal to the circuit court with the presumption of the correctness of that order.

In Gold as Executor of Last Will and Testament of Mary

A. Donnelly, deceased, v. Walter S. Ashby, *et al.,* etc., 137 Fla. 459, 188 Sou. 108, we held: "In will contest, probate court's conclusion on conflicting evidence will not be disturbed unless the legal effect of the proof has been misapprehended, or there is a lack of evidence to support the findings."—and cited in support of this holding Hopper v. Stokes, 107 Fla. 607, 145 Sou. 855; Parker v. Penney, 95 Fla. 922, 117 Sou. 703.

In the Hooper case we held: "Probate court's fact findings on conflicting evidence in will contest should ordinarily not be disturbed on appeal to circuit court where there is ample evidence to sustain findings. When probate judge in will contest misapprehended legal effect of evidence as' entirety, findings should not be sustained merely because there is contradicted evidence on which findings may be predicated." The Parker case adheres to the same rule.

So it appears that it may be considered settled in this jurisdiction that on consideration of the evidence the circuit court may reverse the order of the county judge sitting in probate but only if and when it appears that the county judge misapprehended the legal effect of the evidence as an entirety, or where there is no substantial legal evidence to support the findings of the county·judge, and that the circuit judge may not in the exercise of his appellate power reverse the county judge merely because he does not agree with the county judge as to the weight and probative force of the evidence.

We are not unmindful of the provisions of Section 55 of the 1933 Probate Act, viz.: "Appeal to the circuit court shall be merely a step in the cause, in the nature of a rehearing of the matter appealed, upon the existing record." But we do not construe this provision to abrogate or to affect the rule hereinbefore referred to as stated in

the Donnelly case, *supra,* and in other cases cited where that rule has been adhered to.

Neither do we construe what was said in the case of *In Re:* Alkire's Estate, 142 Fla. 862, 198 Sou. 475, as conflicting with this rule. It was the contention of the appellant in that case that the circuit court had not followed the rule but we said, "It is difficult in a study of the final decree to reach the conclusion as advanced by counsel for appellants," and we affirmed the decree of the circuit court on the application of that rule, saying: "We are unable to find evidence in the record to sustain the contention that undue influence was exerted over the testator by Mrs. Emma Trammell."

After the rendition of the opinion, *supra,* the Court *sua sponte* reconsidered the record in that case and filed its supplemental opinion on October 25, 1940, not yet reported. In that opinion, *inter alia,* we said:

"The judicial power in the several courts vested by Section 1 of Article V, and the original and appellate jurisdiction defined by Sections 5, 11 and 17 for the Supreme Court, the circuit courts and the county judges, as stated above, are not delegable and cannot be abdicated in whole or in part by the courts. The appellate jurisdiction and power of the circuit courts in reviewing decrees and judgments of the county judge in probate as well as other defined matters, includes the judicial power and duty to determine in each case from a due consideration of the transcript on appeal, whether the decree or judgment of the county judge is sustained by the legal effect of the entire evidence and by applicable law. The weight to be given to the findings of fact or to the decree rendered upon the facts adduced in evidence in the trial court, as shown by the record on appeal, is for the appellate court to determine for itself

within the judicial powers and jurisdiction conferred by the Constitution."

And we further said, in that opinion:

"Judicial appeals are not merely formalities, but are intended to aid in administering right and justice by due course of law, as is required by the Constitution, as well as to aid in establishing the jurisprudence of the State.

"The nature of the evidence and other pertinent facts and circumstances as shown by the record, may be considered by the appellate court in determining in each case how much weight should be given to the findings or decree of the trial court in determining whether such findings or decree is or is not erroneous. Decisions in other cases may be persuasive but may not control the appellate judgment or decree.

"The general rule of decision in appellate reviews of evidence shown by the record to have been adduced in the trial courts, is that where there is substantial legal evidence in support of the judgment, order, or decree made thereon and the trial court did not misinterpret the legal effect of the whole evidence or did not misapply the law to the evidence, or the judgment, order or decree is not contrary to the probative force of the whole evidence under the issues and the law, the judgment, order or decree of the trial court will be affirmed; but if in the opinion of the appellate court the judgment, decree or order appealed from is contrary to the probative force or the legal effect of the evidence, or some rule of law has been violated or misapplied, to the substantial injury of the complaining party, the judgment, decree or order appealed from will be reversed by the appellate court." And further:

"The mere presence in the record of substantial evidence to sustain the decree or judgment appealed from is not enough to justify an affirmance. The legal effect of the

entire evidence as it is duly made a part of the record on appeal as well as the law on the issues made, should be considered and determined by the appellate court in the process of adjudicating an affirmance or a reversal of the decree or judgment on appeal.

"This is required by the vesting of judicial power in the courts, by Section 4 and other sections of the Declaration of Rights of the Constitution, and by Section 4637 (2918) C. G. L. above quoted."

It appears to us that in the instant case the circuit court may have attached too much weight and probative force to evidence reflected by certain records of the Florida Welfare Board which were introduced in evidence and which tended to show that in 1937 and 1938 certain representations were made by Sarah, the alleged widow of Frank Thompson, to "welfare visitors" in connection with old-age assistance allowance. We are not called upon to determine now whether or not these records were admissible in evidence, but we may say that in the absence of a showing that the visitors who made the reports were not within the jurisdiction of the court the better practice certainly would have been to have had these visitors as witnesses before the court for examination. Be this as it may, the law is well settled that a common-law marriage is recognized as a valid marriage in this State and it is also settled in all jurisdictions where common-law marriages are recognized as valid that when such marital status once obtains it cannot be dissolved, except by death or by a decree of a court of competent jurisdiction. See Cargile v. Wood, 63 Mo. 501; Badger v. Badger, 88 N. Y. 546, 42 Am. Rep. 263; Meister v. Moore, 96 U. S. 76, 24 L. Ed. 826; Hulett v. Carey, 66 Minn. 327, 61 Am. St. Rep. 419; Peters v. Peters, 73 Colo. 271, 215 Pac. 128, 33 A. L. R. 24; Coad v. Coad, 87 Neb. 290, 127 N. W. 455.

It, therefore, follows that the conduct of Sarah Thompson in connection with the application for old-age assistance had no more effect on the marital status obtaining pursuant to a common-law marriage than it would have had on the marital status pursuant to a ceremonial marrige. The county judge found that the status of common-law husband and wife existed between Frank Thompson and Sarah Thompson. This was necessarily based upon evidence that such marriage agreement was entered into between the parties on the 5th day of July, 1918, was immediately consummated by cohabitation· and that they lived together in one community from that date in 1918 in uninterrupted cohabitation at least until some time in 1934 and continued, with some interruptions from 1934 until the death of Frank Thompson.

The presumption of law is that when people enter into a marriage contract, either ceremonial or of the common-law manner, they are competent and lawfully qualified to do so. In addition to this presumption, the preponderance of the evidence in this case shows that Frank and Sarah Thompson were competent to enter into this marriage contract.

The burden to show incapacity was upon those who challenged the legality of the marriage.

We find the order of the county judge amply supported by the record, and that he correctly construed the legal effect of the proof. Therefore, the order of the circuit court must be reversed and the cause remanded with directions that an order be entered not inconsistent with the views herein expressed.

So ordered.

Reversed and remanded.

BROWN, CHAPMAN and ADAMS, J. J., concur.

TERRELL, C. J., WHITFIELD and THOMAS, J. J., dissent.

THOMAS, J. (dissenting).—Although I agree with the principles of law announced in the opinion adopted by a majority of the Court, I cannot reach the conclusion, after a careful examination of the record, that the circuit judge should be reversed, because, applying the rules announced, 1 think he arrived at a just decision.

TERRELL, C. J., and WHITFIELD, J., concur.